183 F.3d 468 (6th Cir. 1999)
 ALEXIS HERMAN, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR (SUCCESSOR TO ROBERT REICH), PLAINTIFF - APPELLEE,
v.
PALO GROUP FOSTER HOME, INC., A MICHIGAN CORPORATION; ABRAHAM JOSHUA, INDIVIDUALLY, AND DOING BUSINESS AS RAMSDELL FOSTER CARE; RAMSDELL FOSTER CARE, DEFENDANTS - APPELLANTS.
 No. 97-2102
 U.S. Court of Appeals, Sixth Circuit
 Argued: February 5, 1999
Decided and Filed: May 17, 1999*
Ordered Published: July 16, 1999.
 
 Appeal from the United States District Court for the Western District of Michigan at Kalamazoo. No. 96-00280--Richard A. Enslen, Chief District Judge.[Copyrighted Material Omitted]
 John H. Hess (argued and briefed), Grand Rapids, Michigan, for Defendants-Appellants.
 Paula W. Coleman (argued and briefed), William J. Stone, U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for Plaintiff-Appellee.
 Before: Jones, Nelson, and Boggs, Circuit Judges.
 OPINION
 Boggs, Circuit Judge.
 
 
 1
 The United States Secretary of Labor brought an action in district court to enjoin the Palo Group Foster Home, Inc. ("Palo"), its owner, Abraham Joshua, and Joshua's other business, Ramsdell Foster Care ("Ramsdell"), from violating certain provisions of the Fair Labor Standards Act ("FLSA" or "Act"), and to recover unpaid wages owed to Defendants' employees plus statutory liquidated damages. The district court granted summary judgment for the Secretary, awarded actual and statutory liquidated damages to the underpaid employees, and permanently enjoined Defendants from violating the FLSA. Herman v. Palo Group Foster Home, Inc., 976 F. Supp. 696 (W.D. Mich. 1997). We adopt the reasoning of Chief Judge Enslen's thorough opinion and affirm, discussing here only the errors charged on appeal.
 
 I.
 
 2
 Joshua was the president of the now-defunct Palo, and the owner and administrator of Ramsdell. Both entities provided adult foster care for the sick, aged, and mentally ill in western Michigan. At all relevant times, Joshua was the primary individual in charge of establishing personnel practices for both businesses.
 
 
 3
 In 1983, the Department of Labor ("DOL") investigated Palo and discovered violations of the Act's minimum wage and overtime requirements that reflected $1,073.02 in unpaid wages to employees[1]. The DOL also discovered that Palo hadnot kept the records required by the FLSA. The DOL compliance officer informed Joshua of the deficiencies, and Joshua agreed to comply with the requirements of the Act in the future.
 
 
 4
 The DOL followed up with an investigation in 1985. The investigators again found Palo in violation of the FLSA. In particular, they informed Joshua that in order to claim credit for meals and lodging provided to his employees, he was required to keep accurate records of the actual costs of those services. The DOL agents computed Joshua's credits for the 1983-1985 period from his other business records, and calculated his wage underpayments as $7,544.56. The agents specifically informed Joshua that the calculated credit applied only to the 1983-1985 period under investigation, and that he was required to maintain records showing the actual cost of food, lodging, and other facilities furnished to his employees if he wished to claim the credits in the future. To reinforce their point, the DOL agents gave Joshua DOL publication 1326, which details the requirements of the FLSA with respect to residential-care facilities.
 
 
 5
 The DOL investigated Palo again in 1995 after receiving a complaint from a former employee. Noting that Joshua was involved with Ramsdell, the DOL included that business also in its investigation. The compliance officer found that Defendants undercompensated their employees by (1) failing to consider hours worked during sleeping shifts as compensable, (2) paying set wages for each shift regardless of the actual hours worked, and (3) taking deductions for providing meals and lodging despite not having kept records of the actual cost of providing them, as required by the Act. The DOL determined that Palo employees were owed $47,509.27 in unpaid wages for the period between April 8, 1993 and June 1, 1996, and that Ramsdell employees were owed $13,044.39 in unpaid wages for the period between May 1993 and April 20, 1996. The DOL allowed some deductions for the provision of meals and lodging, even though Joshua produced no records supporting the deductions.
 
 II.
 
 6
 Defendants charge four errors below. First, they assert that the district court "erred in determining that [Defendants'] response to the motion for summary judgment was deficient due to failure to submit adequate information." Second, they argue that the district court erred in shifting the burden of proof to them as to the adequacy of their records. Third, they claim that the district court erred in finding that they violated the minimum-wage and overtime provisions of the FLSA. Finally, they argue that the district court erred in finding that Defendants willfully violated the FLSA and in allowing the Secretary to collect the enhanced damages associated with willful violation.
 
 
 7
 Appellants' first assignment of error lacks both substance and merit. The record reveals that the district court did not "determine" that Defendant's response to the motion was "deficient" in any manner that carries legal significance. The district court commented on the paucity of Defendants' response, 976 F. Supp. at 699, but the only effect on the proceedings below was the one the district court stated: most of the Secretary's evidence went unrebutted. In fact, the district court considered Defendants' evidence even though it did not meet the Fed. R. Civ. P. 56(e) requirements. Ibid.
 
 
 8
 Appellant's second assignment of error lacks merit. The FLSA sets the minimum wage and overtime standards for most employers in the United States. Generally, an employee must be compensated at or above the statutory rate for the first forty hours per week of work, and at one and one-half times the employee's regular wage for overtime. There are exemptions from these requirements, and an employer seeking an exemption bears the burden of proving that it is applicable. Douglas v. Argo-Tech Corp., 113 F.3d 67,70 (6th Cir. 1997). Exemptions are construed narrowly against an employer seeking to assert an exemption. Auer v. Robbins, 519 U.S. 452, 462 (1997) (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).
 
 
 9
 A plaintiff generally has the burden of proving that his employer violated the FLSA.
 
 
 10
 However, where the employer's records are inaccurate or inadequate... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) (quoted and reaffirmed in United States Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 779 (6th Cir. 1995)), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972).
 
 
 11
 Employers must keep records for each employee of the "hours worked each workday and total hours worked each workweek (for purposes of this section, a 'workday' is any fixed period of 24 consecutive hours and a 'workweek' is any fixed and regularly recurring period of 7 consecutive workdays)." 29 C.F.R. § 516.2(a)(7). "[A]n employer who makes deductions from the wages of employees for 'board, lodging, or other facilities' (as these terms are used in sec. 3(m) of the Act) furnished to them by the employer or by an affiliated person, or who furnishes such 'board, lodging, or other facilities' to employees as an addition to wages, shall maintain and preserve records substantiating the cost of furnishing each class of facility." 29 C.F.R. § 516.27(a). The district court found that Defendants failed to maintain records of the number of hours their employees actually worked each workday and the total number of hours they actually worked each workweek. The district court also found that Defendants did not provide documentation substantiating the cost of providing meals to their employees, nor did they show a legal or factual basis for finding that their records were sufficient despite their failure to comply with the regulations. Therefore, the district court shifted the burden to Defendants according to Cole.
 
 
 12
 In particular, Defendants did not keep track of the hours their employees were on duty but allowed to sleep. "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21. When employees are on duty for twenty-four hours or more, "the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a). However, "[i]f the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes,... if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." Ibid.
 
 
 13
 Defendants' employees worked overnight shifts for which they were not paid, and during which the unrebutted evidence shows that they had various responsibilities,including remaining alert, checking on the residents, and checking the security of the facility. Sleep was permitted, but the employees were awakened frequently to assist the residents. Defendants' employees on twenty-four hour shifts were paid a fixed rate that included an eight-hour sleep deduction, and were not paid for the times their sleep was interrupted. Additionally, Defendants' employees were paid a fixed rate per shift, although they were often required to stay late and their meal times were often less than thirty minutes and were constantly interrupted.
 
 
 14
 The evidence is sufficient to prove that Defendants' employees were undercompensated, even if the burden remained on the Secretary. Defendants assert that their schedule sheets, on which their employees indicated when they had traded shifts with others, satisfy the recordkeeping requirement. This assertion misses the point. At times, the Defendants' employees worked compensable hours that were never recorded nor compensated. At bottom, Defendants disagree with the Secretary about whether sleep shifts, interrupted sleep time on twenty-four hour shifts, and interrupted meal time is compensable. Unfortunately for Defendants, these issues are settled by the FLSA and numerous court decisions.
 
 
 15
 The Secretary presented credible evidence that Defendants' employees had performed work for which they were improperly compensated. Defendants did not keep the records required by the FLSA, so the district court properly shifted the burden to Defendants to show that they did not violate the Act. Despite the fact that Defendants presented almost no evidence, and the evidence they did present was not properly before the court because it did not satisfy the requirements of Rule 56(e), the district court considered it in making its decision. In the face of the Secretary's unrebutted evidence, however, Defendants could not prevail even if the burden did not shift.
 
 
 16
 In their argument for the third assignment of error, Defendants assert essentially equitable arguments. Joshua argues that he gave the DOL the same information he had given them the two previous times they investigated. If it was good enough then, he wonders, why is it not good enough this time? In a related argument that Defendants placed under their second assignment of error, Joshua claims that the sixty-two-cents-per-hour meal allowance established in the 1985 investigation should still apply "since it did not seem to be a matter of concern to the DOL." Further, Joshua maintains that letters from the DOL "establish[ed] that rate."
 
 
 17
 There is corroborated and uncontested evidence that the DOL specifically told Joshua that the rate it established in 1985 was a retrospective rate, and that he would have to keep proper records establishing the actual cost of providing lodging and meals if he wished to receive the credit in the future. Therefore, it is uncontradicted that Joshua knew that it would not be reasonable to rely on the 1985 figure in the future. Similarly, the fact that in 1985 the DOL calculated the meal and lodging costs from records that did not satisfy the statutory requirement did not make it reasonable for Joshua to believe that he was prospectively exempt from the recordkeeping requirements. The DOL explicitly told Joshua that he would have to maintain proper records if he wished to claim the credits in the future. Defendants view the 1985 investigation as setting two precedents: the meal-credit value, and the acceptability of inadequate records to the DOL. The DOL views the 1985 investigation as an accommodation of past violations and a warning not to repeat them. The explicit instructions of the DOL leave no room to doubt which is the correct view. The 1985 investigation set neither precedent. Defendants' third assignment of error is without merit.
 
 
 18
 Section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a), providesthat if an employer "willfully" violates the FLSA, the statute of limitations is three years. If the violation is not willful, the limitations period is two years. Violations are willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 133 (1985). This court held that a violation of the Act was willful where undisputed evidence showed that the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA." Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 967 (6th Cir. 1991) (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988)).
 
 
 19
 There is undisputed evidence that Joshua had actual notice of the requirements of the Act. He had been investigated for violations twice in the past, paid unpaid overtime wages, received explanations of what was required to comply with the Act, and assured the DOL that he would comply in the future. The district court properly found that Defendants' violations were willful and extended the limitations period to three years.
 
 
 20
 The FLSA provides for liquidated damages in an amount equal to the actual damages. 29 U.S.C. § 216(c). The Portal-to-Portal Act provides a limited affirmative defense to the liquidated-damages provision. The trial court may, at its discretion, reduce or eliminate the liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. Elliott Travel recognized that the liquidated damages issue is "closely related" to the willfulness issue. 942 F.2d at 967. Absent a good-faith disagreement with the authority of the government to promulgate the statute, a finding of willfulness is dispositive of the liquidated-damages issue. The district court properly awarded statutory liquidated damages.
 
 III.
 
 21
 For the foregoing reasons, and the reasons given by the district court, the judgment of the district court is AFFIRMED in all respects.
 
 
 
 NOTES:
 
 
 *
 This decision was originally issued as an "unpublished decision" filed on May 17, 1999. On July 7, 1999, the court designated the opinion as one recommended for full-text publication.
 
 
 [1]
 The DOL initially found that Joshua owed $2,600.61 in back pay, then revised its assessment to $1,073.02.