John **TIFFEY**, Plaintiff,

v.

**SPECK ENTERPRISES, LTD.**, Defendant.

**No. 4:04 CV 40297 JEG.**

United States District Court,
S.D. Iowa,
Central Division.

March 8, 2006.

Paige Ellen Fiedler, Thomas Andrew Newkirk, Fiedler & Newkirk PLC, Johnston, IA, Pamela J. Walker, Sherinian & Walker PC, West Des Moines, IA, for Plaintiff.

Gregory J. Wilson, Janice M. Thomas, Cory D. Abbas, Patterson Lorentzen Duffield Timmons, Des Moines, IA, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment. Plaintiff John Tiffey ("Tiffey") is represented by Paige Fiedler, Pamela Walker, and Thomas Newkirk. Defendant Speck Enterprises, Ltd. ("Speck"), is represented by Gregory Wilson, Janice Thomas, and Cory Abbas. Defendant requested oral argument, and the matter came on for hearing February 3, 2006. The matter is now fully submitted for ruling. For the reasons listed below, Defendant's motion is granted in part and denied in part.

## SUMMARY OF MATERIAL FACTS [1]

Speck is an Iowa corporation owned by Mark and Lisa Fargo. The Des Moines-based company provides parking lot and

---

1. In its recitation of facts, the Court is mindful that it is bound to view the facts in the light most favorable to the nonmoving party and to give that party the benefit of any reasonable factual inferences. *See, e.g., Girten v. McRentals, Inc.,* 337 F.3d 979, 983 (8th Cir. 2003).

street maintenance to its clients. Each crew of laborers is supervised by a crew leader, who is paid at an hourly rate. The seasonal nature of the work leads to varying weekly hours, with the fewest working hours in the winter and spring.

Tiffey began full-time employment with Speck as a crew laborer in 1998. He was paid an hourly wage, and his weekly hours varied. In October 2001, Tiffey was offered a promotion to Operations Coordinator, which he understood to involve starting the crews, monitoring completion of their jobs, and generally assisting Rich Wood, the Operations Manager. He also understood that any position with Speck, labor or management, would involve some weeks of work beyond 40 hours and that each week's hours would vary based upon the weather and amount of work available. By May 2003, Tiffey's weekly hours varied from 32.14 to 89.27 hours.

Speck told Tiffey the Operations Coordinator position was salaried and did not include overtime pay. Tiffey denies he was ever paid on a salary basis, though he negotiated an increased salary when he began the position and later obtained another salary increase in May 2003. Tiffey also denies that he performed any Operations Coordinator duties or any other duties that would render him exempt from the overtime provisions of the FLSA.

By March 2004 it became clear the Operations Coordinator position was not a suitable fit for Tiffey, and he was demoted to a "floating" crew leader position. He no longer had use of a company truck, but he retained phone and credit card privileges as was customary for crew leaders. The floating position had an expected average work week of 55 hours.

While Tiffey was the Operations Coordinator, he was not paid overtime wages.

He claims he was not actually a salaried employee during this time and is entitled to overtime wages and vacation pay. After his demotion, but still in March 2004, Tiffey took his concerns to the Wage and Hour Board. He complained to the Department of Labor that his pay was docked on numerous occasions even though Mike Roberts, a salaried employee, was paid when he took leave for a knee injury. He also claims his job did not change after his promotion and that he continued to perform the duties of a laborer as the Operations Coordinator.

Tiffey claims once he began inquiring about his right to overtime pay he was retaliated against in the form of restricted hours, shunning by co-workers, and the re-hiring of an employee he fired when he was Operations Coordinator. According to Tiffey, these alleged retaliatory events caused him to resign in June 2004.

Tiffey filed his final amended Complaint in this Court on October 20, 2004, alleging claims against Speck under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Iowa Wage Payment Collection Act, Iowa Code ch. 91A, as well as a claim for retaliatory discharge.

Speck filed an Amended Answer on April 13, 2005. Speck admits it is an "employer" within the meaning of the FLSA and the Iowa Wage Payment Collection Act. Speck further admits that jurisdiction is proper under the Court's federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367 (2000). Speck denies the substance of the allegations and asserted the affirmative defenses of statute of limitations, good faith, and FLSA exemption.

Speck moved for partial summary judgment on October 11, 2005, and requested oral argument. Tiffey filed a resistance [2]

**2.** Inexplicably, other than through oversight, Tiffey's resistance asks the Court to deny summary judgment "regarding her gender discrimination claim" though Tiffey is male and

on December 12, 2005, and Speck filed a reply brief on December 21, 2005.

## APPLICABLE LAW AND DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT MOTION

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion should be interpreted by the trial court to dispose of factually unsupported claims and defenses. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, the trial judge is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *Id.* The Court is bound to view the facts in the light most favorable to the nonmoving party and to give that party the benefit of any reasonable factual inferences. *See, e.g., Girten v. McRentals, Inc.,* 337 F.3d 979, 983 (8th Cir.2003).

While the moving party initially must make a showing of the basis for its motion and the portions of the record that support the party's assertion that there is no issue of material fact, Rule 56 does not require the moving party to support its motion with affidavits or other similar materials negating the opponent's claim. *Hartnagel*

v. *Norman,* 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

When the moving party has carried its initial burden, the nonmoving party must proffer specific facts demonstrating the existence of a genuine issue for trial and may not rely on mere allegations. *Vaughn v. Roadway Express, Inc.,* 164 F.3d 1087, 1089 (8th Cir.1998) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). The nonmoving party must make a satisfactory showing on every element of its case for which it has the burden of proof at trial. *Wilson v. Southwestern Bell Tel. Co.,* 55 F.3d 399, 405 (8th Cir.1995); *see also Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. It is thus the task of the trial court to "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

### II. RETALIATORY DISCHARGE

Tiffey does not resist Speck's motion for summary judgment on his retaliatory discharge claim, conceding that the facts do not support this claim. The Court will accordingly grant Speck's motion for summary judgment on this claim.

no gender discrimination claim has been pled. The statement of material facts and

brief address the correct parties and claims.

## III. FAIR LABOR STANDARDS ACT [3]

An employee can come within the provisions of FLSA under individual or enterprise coverage. *See* 29 C.F.R. § 779.100 (2005). Both parties seem to presume that the more common enterprise coverage is the applicable standard in this case. Enterprise coverage encompasses those businesses (enterprises) whose employees engage in commerce and have an annual gross volume of $500,000. 29 U.S.C. § 203(s)(1)(A). Defendant admits it has been an "enterprise engaged in commerce" within the definition of section 203(s). Neither party challenges the applicability of the FLSA to this dispute.

### 1. Statute of Limitations

Tiffey seeks recovery of overtime wages for the period from October 2001 to March 2004. The applicable statute of limitations is found in 29 U.S.C. § 255 (the Portal–to–Portal Act), which provides for causes of action under the FLSA accruing after May 14, 1947, "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255(a). Tiffey filed his Complaint June 1, 2004, so Speck argues any claims that accrued prior to June 1, 2002, are time-barred. Tiffey, on the other hand, argues that Speck willfully violated FLSA provisions, invoking the three-year statute of limitations and rendering all his wage claims timely.

■ For purposes of the Portal-to Portal Act, a cause of action accrues upon each regular payday following the pay period when the employee rendered the services for which compensation is allegedly due. *Hartt v. United Constr. Co.*, 655

F.Supp. 937, 938 (W.D.Mo.1987), *aff'd*, 909 F.2d 508 (8th Cir.1990) (unpublished table decision); *Reid v. Solar Corp.*, 69 F.Supp. 626, 629 (N.D.Iowa 1946); 29 C.F.R. § 790.21(b) (2003). Accordingly, the dates at issue are each payday that occurred between October 2001 and June 1, 2002. The claims that matured on these dates can only form the basis for liability in the present action if Speck acted willfully and the three-year statute of limitations applies.

■ The Supreme Court resolved a circuit split on the applicable willfulness standard in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The Court rejected the *Jiffy June* standard of willfulness, which imposed a "knew or should have known" standard. *Id.* at 134, 108 S.Ct. 1677; *see Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971). The Court instead found that an employer willfully violates the FLSA when it acts with knowledge of or reckless disregard for whether its actions are prohibited by the statute. *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677.

In the past, courts have found willful violations where the employer continued to violate the FLSA despite having notice of the Act's requirements via past investigations, prior agreements to pay wages, and promises to comply. *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir.1999) (defendant was investigated by the DOL three times and notified of several wage violations); *cf. Kaspar Wire Works, Inc. v. Sec'y of Labor*, 268 F.3d 1123, 1128 (D.C.Cir.2001) (holding mere absence of prior violation does not preclude finding of willfulness). In actions

---

**3.** The Department of Labor significantly revised the FLSA regulations effective August 23, 2004, especially the exemption provisions in 29 C.F.R. § 541 et seq. As Tiffey notes, the pre–2004 regulations apply in this case because Tiffey resigned almost two months before the new regulations took effect. Accordingly, the Court applies the prior law.

for Equal Pay Act violations, which are also covered by the Portal–to–Portal Act's limitations period, courts have found willful violations where the plaintiff had complained about pay discrepancies but the employer, thus informed, did nothing to rectify the situation. *Pollis v. New School for Social Research*, 132 F.3d 115, 119–20 (2d Cir.1997). In addition, the Eighth Circuit upheld a jury finding of willfulness were employees were instructed to enter no more than 40 hours per week on their time sheets and told that they would not receive overtime pay despite being listed as nonexempt on hiring documents. *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1083 (8th Cir.2000).

█ Tiffey claims Speck willfully violated the FLSA because (1) Speck continued to deduct his pay after being advised to the contrary by counsel, and (2) Speck did not make similar deductions from other salaried employees.

First, Tiffey claims he complained about his deductions and Speck contacted an attorney, who advised that such deductions were improper. According to Tiffey, Speck continued to deduct his wages contrary to this advice, which demonstrates a willful violation of the FLSA. The record cited by Tiffey does not provide a timeline of notice and action by Speck. Lisa Fargo's deposition states that Roberts and Tiffey exhausted their paid time off resource in 2002 and 2003, and that Ms. Fargo and Tiffey discussed his exhaustion of paid time off, though she could not recall the exact date of that conversation. Tiffey seems to reluctantly admit in his deposition that he had exhausted his paid leave at some point.

Lisa Fargo also testified that she "investigated and checked, and, yes, you can dock for an entire day gone when they've exhausted that [paid time off] resource, and so we put that policy into force." (L. Fargo Dep. 12:22–25.) Tiffey cites his own affidavit and pay stubs to support his claim that Speck continued to deduct his wages against the advice of counsel. While this evidence supports Tiffey's claim that his pay was docked,[4] it is wholly silent as to whether Speck had been advised to the contrary when those deductions were made.

Speck cut Tiffey's pay when he left work for several hours to attend a dental appointment in November 2001. After the Wage and Hour Board called Speck in March 2004, it contacted counsel and discovered that the partial-day deduction was not appropriate for a salaried employee. Speck claims it corrected the error by reimbursing Tiffey on May 14, 2004. Tiffey does not dispute that he was reimbursed outright but claims instead that Speck did not inform him of any reimbursement or issue him a separate check. The pay stubs in the appendix stop at January 2004, so the Court cannot point to any written evidence that the payment was made. Counsel for Tiffey explained in oral argument that Tiffey has no memory or record of reimbursement, and he continues to contest this point. Even if no reimbursement occurred, Lisa Fargo testified in her deposition, "at the time my knowledge was that that was acceptable under the federal guidelines." (L. Fargo Dep. 31:8–9.) Tiffey has not provided any evidence that Speck knew or recklessly disregarded the possibility the deduction was improper when it was made.

---

4. In one such instance, Tiffey claims his pay was "docked" because his usual pre-tax earnings were $923.08 but that number dropped to $865.38 for the week ending March 6, 2003. Tiffey negotiated a second raise on or around May 23, 2003, and the pay stub for the period ending March 6, 2003, is the only one in the appendix before May 2003. Speck argues the raise explains the pay disparity.

As noted above, Speck claims it was advised that the FLSA permitted full-day deductions from salaried employees without a balance of paid leave but did not find out half-day deductions were impermissible until after Tiffey's complaint to the Wage and Hour Board. At oral argument, Tiffey's counsel suggested the fact that Speck did not check the FLSA's provisions or consult an attorney, when it knew of the law's potential applicability, demonstrated recklessness. In *Samuels v. Kansas City Missouri School District*, the Eighth Circuit rejected such reasoning. There, the plaintiff argued the "elementary principal [sic]" that "everyone is presumed to know the law and what the law requires of them to conform their actions accordingly" allowed the court to presume the defendant knew it violated the FMLA and therefore willfully violated the act. *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 802–03 (8th Cir.2006). The Court of Appeals first noted that the willfulness standard applied in FMLA cases is the same as in FLSA cases, and went on to hold that the *McLaughlin* knowledge or reckless disregard standard "recognizes an employer's general knowledge about the statute's potential applicability, by itself, fails to demonstrate willfulness." *Id.*

Every deduction Tiffey complains of, and every "npto" notation in the pay stubs and time sheets occurred before March 2004. Tiffey has not presented any evidence, beyond vague accusations, that Speck knew or recklessly disregarded the possibility the deductions were improper before March 2004. In addition, every deduction except that involving the dental appointment was for a full day. Speck claims all of those full-day deductions were made after the exhaustion of Tiffey's paid time off resource, in accordance with its policy. While Tiffey remains free to present proof at trial that Speck's policy was an incorrect interpretation of the FLSA,

there is nothing to indicate any alleged misinterpretation was willful.

Second, Tiffey claims the fact that Speck did not deduct Roberts' pay for his injury-related time off is proof that Speck was aware that deductions could not be made from salaried employees' pay, and therefore any such deductions made from Tiffey's pay were willful violations of the FLSA. Roberts was a salaried employee and missed work on several occasions due to knee surgery. Speck did not deduct Roberts' pay when he left after using up all his vacation time. Dean Zwemke, General Manager of Speck, stated in an affidavit that he was in charge of keeping track of Speck employees' paid time off balances, but he did not properly record Roberts' leave for his knee injury. Speck's personnel records then erroneously showed Roberts had a paid time off balance, which caused Speck to pay Roberts for leave he had not accrued. According to Speck, Roberts did not agree to correct the error, a position Speck accepted because it was the company's mistake. Speck therefore asserts that the Roberts incident was a bookkeeping error that was corrected and does not indicate knowledge of or reckless disregard for the FLSA.

Tiffey presents an affidavit of Roberts, which states only that he was paid for time off after he used up all his paid leave and does not mention any conversation about a clerical error. Tiffey has presented no evidence disputing that this may have been a mistake and has presented no evidence of malice or bad faith in deducting from Tiffey what was not deducted from other employees. At best, Tiffey has demonstrated negligent recordkeeping on the part of Speck, but that is not enough to generate a question of fact as to willfulness.

Tiffey did not present evidence that he or anyone else notified Speck it may have

violated the FLSA until March 2004. In fact, Tiffey testified to the contrary in his deposition, stating that he did not tell Mark or Lisa Fargo that he was going to the Wage and Hour Board and he did not think anyone else had informed them of his intentions. Tiffey's position is thus distinguishable from the plaintiff in *Pollis*, who complained directly to the employer and maintained a willful violation of the Equal Pay Act based on the employer's awareness of and failure to rectify gender discrepancies in pay. *Pollis*, 132 F.3d at 119–20. Similarly, Tiffey has not presented evidence that Speck was investigated for past FLSA violations or entered into any plan, agreement, or pledge based on findings of noncompliance by the DOL. *Herman*, 183 F.3d at 470–71, 474. Finally, there is also no indication that Speck internally classified Tiffey as non-exempt employee or instructed him to report no more than 40 hours of work each week. *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir.2000).

Tiffey's arguments as to willfulness appear to essentially be arguments on the merits of the underlying claims. While Tiffey remains free to pursue the merits of his timely-pled claims, allegations of FLSA violations are not necessarily indicative of willfulness. Although the Court must give Tiffey the benefit of all reasonable factual inferences, *Girten*, 337 F.3d at 983, Tiffey cannot defeat Speck's motion based on mere allegations. *Vaughn*, 164 F.3d at 1089. The present record would support a finding of negligence at best but does not create a question of material fact on the issue of willfulness. Accordingly, the two-year statute of limitations applies, and

Speck is entitled to summary judgment for any claims arising before June 1, 2002.[5]

## 2. Fluctuating Workweek Method

■ The FLSA requires employers to pay employees overtime wages when they work in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1). However, certain employees are exempt from the overtime requirements, including employees working "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The burden is on the employer to prove an exemption applies to an employee. *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir.2003).

■ Speck contends Tiffey was exempt from the FLSA overtime requirements, though it has not briefed the issue and conceded at oral argument that questions of material fact exist regarding whether Tiffey is exempt. Speck instead asks the Court to put aside the issue of exemption and grant it summary judgment as to the manner of calculating damages should Tiffey be found exempt. Specifically, Speck claims even if Tiffey was not exempt, he was still paid a salary, so the Court should calculate any unpaid overtime wages under the "fluctuating workweek" method. Alternatively, counsel urged at oral argument that the "day rate" calculation method is also applicable if the fluctuating workweek method is unavailable.

As explained in the 2003 regulations, the concept of fixed salary for fluctuating hours means as follows:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the

---

**5.** Counsel for Tiffey stated in oral argument that the only full-day deductions he is disputing are those for July 18, August 29, November 7, and November 14, 2003. All of these dates fall within the two-year statute of limita-

tions, so it appears the Court's ruling in this matter will only affect the claim for the partial-day deduction for the dental appointment, which occurred in November 2001.

salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. [The FLSA permits such arrangements] [w]here there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number. . . .

29 C.F.R. § 778.114 (2003). The FLSA permits this sort of compensation plan as long as it results in the employee being paid at least minimum wage, and as long as the employee receives compensation at one-half the regular rate of pay for all overtime hours. 29 C.F.R. § 778.118(a). Under this fluctuating workweek method, overtime may be paid at one-half the regular rate rather than the one and one-half rate prescribed in 29 U.S.C. § 207(a)(1), because part of the compensation for those hours is already contemplated by the regular salary. *Id.*

The day rate method also allows an employer to avoid paying overtime at the one and one-half rate where "the employee is paid a flat sum . . . without regard to the number of hours worked in the day." 29 C.F.R. § 778.112 (2003). Overtime may be paid at one-half the regular rates under this method also. *Id.*

Speck's motion for summary judgment as to the method of calculating overtime is premature. Speck does not concede Tiffey was a non-exempt employee but asks the Court to assume that is the case for purposes of deciding how to calculate the overtime it denies it owes. If Tiffey is exempt, there is no need to discuss the fluctuating work week method, so it is a poor use of the Court's time to consider that calculation without first determining whether Tiffey is exempt. The record is clear that questions of material fact pre-

clude that determination at this time, so Speck's motion is denied.

## IV. IOWA WAGE PAYMENT COLLECTION ACT

### 1. Statute of Limitations

■ Speck argues Tiffey's state law claim is barred by the two-year statute of limitations in Iowa Code § 614.1(8) (2005) ("Those founded on claims for wages or for a liability or penalty for failure to pay wages [must be brought] within two years"). Tiffey cites only federal cases interpreting the FLSA in support of his contention that a three-year statute of limitations applies. Tiffey has not presented authority for a three-year statute of limitations for willful violation of state law. Accordingly, any state law wage claims for the period October 2001 to June 2002 are time-barred.

### 2. Merits of the Claim

Speck's brief in support of its motion for summary judgment mentions in the introduction that summary judgment is appropriate on the state law claim because evidence has been presented only on overtime wages due under the FLSA. The Complaint seeks overtime and vacation wages under Iowa law.

Neither party has briefed this claim. It is assumed this was not intended for consideration in the summary judgment motion, since it is styled as a partial summary judgment motion. Accordingly, the Court will not issue a ruling on the merits of the Iowa state law claims.

### CONCLUSION

Speck's motion for summary judgment on Tiffey's retaliation claim is unresisted and therefore is granted.

■ Tiffey has not generated a genuine question of material fact as to whether

Speck willfully violated the FLSA for purposes of invoking the three-year statute of limitations. Speck may have erroneously interpreted the FLSA and may have been negligent in maintaining its personnel records, but Tiffey has not overcome Speck's evidence that it believed it was acting correctly at the time. Mere knowledge of the FLSA's existence and its potential applicability does not rise to the level of knowledge or reckless disregard for its terms required to apply the three-year statute of limitations. Accordingly, Speck's motion for summary judgment must be granted as to any claims under the FMLA arising before June 1, 2002.

Similarly, no authority has been presented to the Court for extending the Iowa statute of limitations beyond two years. Speck's motion for summary judgment is granted as to any claims under Iowa state law arising before June 1, 2002.

The Court will not decide the issue of the applicability of the fluctuating workweek method without a determination of Tiffey's exempt status from the FLSA overtime provisions. If Tiffey is exempt, any analysis by the Court of the fluctuating workweek method would be rendered merely an academic exercise. Since the parties have conceded that genuine issues of material fact remain as to whether Tiffey is exempt, Speck's motion for summary judgment must be denied as to the method of calculating overtime.

The merits of the Iowa state law claims have not been briefed and are not before the Court on this motion.

For the foregoing reasons, Speck's Motion for Partial Summary Judgment (Clerk's No. 26) is **granted in part and denied in part**.

**IT IS SO ORDERED.**