RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARTIN J. WALSH, Secretary of Labor, United States
Department of Labor,

　　　　　*Plaintiff-Appellee/Cross-Appellant*,

　　　*v.*

KDE EQUINE, LLC, dba Steve Asmussen Stables;
STEVE ASMUSSEN,

　　　　　*Defendants-Appellants/Cross-Appellees*.

⎤
⎟
⎟
⎟
⎬  Nos. 21-5054/5133
⎟
⎟
⎟
⎦

─────────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:15-cv-00562—Claria Horn Boom, District Judge.

Argued: December 9, 2021

Decided and Filed: December 22, 2022

Before: DONALD, THAPAR, and LARSEN Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Mbilike Mwafulirwa, BREWSTER & DE ANGELIS, P.L.L.C., Tulsa, Oklahoma,
for Appellants/Cross-Appellee. Heather Maria Johnson, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Mbilike Mwafulirwa,
Clark O. Brewster, BREWSTER & DE ANGELIS, P.L.L.C., Tulsa, Oklahoma, for
Appellants/Cross-Appellees. Heather Maria Johnson, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Appellee/Cross-Appellant.

─────────────────

## OPINION

─────────────────

BERNICE BOUIE DONALD, Circuit Judge. The Department of Labor (DOL) alleged
that KDE Equine violated various provisions of the Fair Labor Standards Act, including the

minimum wage, overtime, and recordkeeping requirements. *See* 29 U.S.C. §§ 206, 207, 211. The district court granted judgment to the DOL on its overtime claims but found for KDE Equine on the DOL's claims for willful violations and liquidated damages. Both parties appeal. For the following reasons, this Court AFFIRMS in part, VACATES in part, and REMANDS for further proceedings.

**BACKGROUND**

Steve Asmussen is a professional racehorse trainer. Asmussen and his wife own and manage KDE Equine, a company that runs horse racing operations. Together, they are referred to as KDE throughout this opinion.

KDE is one of the largest thoroughbred racehorse training and care operations in the United States. KDE operates four locations in three states: Texas, New York, and Kentucky. KDE trained around 180 racehorses and employed between 120 and 150 employees.

Among KDE's employees are the "hotwalkers" and "grooms." The hotwalkers are responsible for walking and bathing the horses to cool them down after a training session. Grooms prep the horses for training by saddling the horses, administering liniments and poultices, brushing the horses, clipping their hooves, and cleaning the stalls. On race days, grooms are responsible for leading the horses to the track and the hotwalkers cool them down after the race.

The hotwalkers and grooms work similar hours. The hotwalkers work every day of the week from 5:00 a.m. to 10:30 a.m. Some hotwalkers work additional hours in the afternoons every other day. The additional hours that hotwalkers work are typically from 3:00 p.m. to 4:30 p.m. On average, the hotwalkers work approximately 44.25 hours per week. Grooms also work every day of the week. Usually, grooms work from 5:00 a.m. to 11:00 a.m. and return to work every afternoon from 3:00 p.m. to approximately 4:30 p.m. On race days, grooms have an opportunity to earn extra pay if one of their horses is racing. It is undisputed that grooms typically work between 48.5 and 52.5 hours per week.

Both parties agree that the hotwalkers and grooms are paid a salary and receive extra compensation for additional tasks outside of their normal duties. Most of the employees did not submit timesheets for the additional hours worked, while others submitted inaccurate time sheets. Because KDE does not have adequate timesheet records, it is impossible to determine how many hours each employee worked.

The Department of Labor ("DOL") filed a lawsuit against KDE in the United States District Court for the Western District of Kentucky, seeking an injunction and damages for KDE's alleged violations of various provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The amended complaint, filed in January 2017, asserts claims against KDE under 29 U.S.C. § 206, for failing to pay employees the federal minimum wage; 29 U.S.C. § 207, for failing to pay employees overtime wages; and 29 U.S.C. § 211, for failing to keep adequate and accurate employment records. The DOL moved for partial summary judgment on the § 207 and § 211 claims and requested that the court find that KDE acted willfully which would warrant liquidated damages and a three-year statute of limitations period. In response, KDE moved for summary judgment on all counts.

The district court granted in part and denied in part the DOL's motion for summary judgment. The court granted summary judgment in the DOL's favor on the § 211 recordkeeping claims for 2012 and 2013 but denied summary judgment for 2014. The court also denied the DOL's overtime claims for "willful" violations entitling the employees to liquidated damages and a three-year statute of limitations period. Regarding KDE, the district court granted in part and denied in part KDE's motion for summary judgment, denying its motion on the minimum wage, overtime, and recordkeeping violations, but granting summary judgment in KDE's favor on the willful and liquidated damages claims.

After a bench trial, the district court found in favor of the DOL on the recordkeeping claims for the year of 2014. The district court stated that the timesheets did not match the hours worked and were unreliable. The court went on to note that it was "abundantly clear from testimony at trial" that KDE had violated recordkeeping requirements under the FLSA.

After trial, the district court granted judgment to the DOL on the overtime claims. The court found that the grooms and hotwalkers worked varying hours as opposed to fixed hours, and thus rejected the employer's lump-sum pay plan for overtime worked by grooms and hotwalkers. The court granted injunctive relief and ordered KDE to get into compliance with the FLSA's requirements. The court also ordered KDE to pay the grooms and hotwalkers $211,541.76 in back wages. Both parties appealed.

The issues on appeal are: (1) whether the district court erred in ruling that KDE's pay plans did not comply with 29 U.S.C. § 207; and (2) whether the district court erred in granting summary judgment to KDE on the willfulness and liquidated-damages issues.

**DISCUSSION**

I.      KDE's Overtime Violations

The district court held a bench trial on the overtime claims. We review the district's conclusions of law de novo and its factual findings for clear error. *See Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 547 (6th Cir. 2010).

The FLSA imposes certain requirements on employers. One of these requirements is to "make, keep, and preserve" payroll records for a period of time. *See* 29 U.S.C. § 211(c). Along with recordkeeping requirements, the FLSA also imposes overtime requirements on employers. *See* 29 U.S.C. § 207(a)(1). Specifically, the statute requires employers to compensate employees at one and one-half times their regular rate for each hour worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). "Regular rate" is generally defined by the total weekly pay divided by the weekly hours. *See id.* at § 207(e); 29 C.F.R. § 778.109. All employees that fall within this provision are "entitled to overtime pay calculated in this way, whether the employer pays them on an hourly basis or not." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 363 (6th Cir. 2019). The Department of Labor is the authority responsible for prosecuting any violations committed by employers. *See* 29 U.S.C. §§ 211(c), 215(a)(5), 217.

Overtime requirements may be met through various pay practices. At issue here is whether KDE's payment practices for the grooms and hotwalkers met the recordkeeping and

overtime requirements under either of the three salary plans:  (1) a salary plan that includes an overtime premium for employees who regularly worked overtime hours, (2) a "Fluctuating Work Week" salary plan, or (3) "lump-sum" payments for additional tasks.[1]

KDE's first theory is that its payment scheme provided a premium for a fixed number of overtime hours under 29 C.F.R. § 778.309. A DOL regulation interpreting § 207 states, in relevant part:

> Where an employee works a regular fixed number of hours in excess of the statutory maximum each workweek, it is, of course, proper to pay him, in addition to his compensation for nonovertime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked.

29 C.F.R. § 778.309.

Section 778.309 "applies only when an employee works a *fixed* number of overtime and non-overtime hours." *See U.S. Dep't of Lab. v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 283 (4th Cir. 2019).  After the bench trial, the district court found that neither the grooms nor the hotwalkers worked a fixed number of hours.  Instead, "the hours that the employees worked from week to week fluctuated depending on if they arrived early, stayed late, left early, worked additional hours on race days and worked outside the normal schedule hours performing 'extras.'"  That finding was supported by employee testimony that the district court found credible.  KDE has not shown those findings were clearly erroneous.  Thus, § 778.309 doesn't apply.

KDE argued in the alternative that its employees worked "Fluctuating Work Weeks" ("FWW") which is an acceptable method for calculating overtime premiums under § 207 when employees work varying hours from week to week but are paid fixed base salaries.  *See* 29 C.F.R. § 778.114(a), (c).  This method still requires tracking the employees' hours to properly compensate for overtime.  *Id.*; *see also Hall v. Plastipak Holdings, Inc.*, 726 F. App'x 318, 321 (6th Cir. 2018).  This KDE failed to do.  According to the district court, "[t]he timesheets . . .

---

[1]On appeal, KDE also argues that it complied with the FLSA's overtime requirements by paying grooms and hotwalkers in accordance with 29 U.S.C. § 207(f). KDE acknowledges that it forfeited this argument by failing to raise it before district court, and we are not persuaded by its attempts to avoid that forfeiture.

were too inaccurate, the time notes too general (and too few), and . . . the actual hours for the extras were not tracked." As a result, the district court could not calculate overtime premiums using this method. *Cf. Plastipak Holdings*, 726 F. App'x at 324 & n.3. That finding was supported by the testimony of several KDE executives and employees. [*Id.* at 7841.] KDE hasn't shown that the district court erred by concluding that its FWW theory failed.

KDE's last and final salary plan for overtime included paying employees lump-sums for additional tasks performed outside of their normal duties. Employees could earn $25.00 for unloading hay, $25.00 for transporting horses to the racetrack, and $100.00 for performing laundry tasks. The district court consulted the DOL's Field Operations Handbook ("FOH") for guidance on whether lump-sums comply with § 207. The DOL handbook states:

> Under appropriate circumstances, and where close scrutiny reveals there is a clear understanding between the employer and the employee that a lump-sum payment is predicated on at least time and one-half the established rate, and that overtime payment is clearly intended, the fact that the payment is a lump sum will not result in a violation if it equals or exceeds the proper overtime payment due . . . This policy shall be applied very narrowly and shall not be applied to lump-sum payments which are nothing more than bonuses for working undesirable hours.

DOL Field Operations Handbook § 32j06. While the FOH is not binding on this court, courts have found it to be persuasive of the "DOL's intent and should be considered." *Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017).

By its own terms, the Handbook creates a narrow exception. *See Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 283 n.5 (stating that § 32j06 "solely applies for limited periods, where employers compensate employees with a lump sum for a special job for an estimated number of overtime hours" and "is inapplicable for regularized work schedules that purportedly include overtime compensation" (citations omitted)). The district court held that this case doesn't fall within that narrow exception. KDE doesn't seem to challenge that holding on appeal. So it has forfeited the argument. *See Wedgewood Ltd. P'ship v. Township of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010).

Because all three of KDE's theories fail, the district court didn't err by granting judgment to the DOL on the overtime claims.

II.          Willful Violations of Section 207

There is a two-year statute of limitations for an ordinary violation under the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  When the violation is willful, however, the statute of limitations is three years.  *Id.*  An employer who violates § 6 or § 7 of the FLSA is liable to the affected employees in the amount of their unpaid minimum wages or overtime compensation plus an equal amount as liquidated damages.  29 U.S.C. § 216(b).

To show that an employer acted willfully, the DOL must prove that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *See McLaughlin*, 486 U.S. at 133.  This court has found an employer to have known or acted with reckless disregard where the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA."  *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 473–74 (6th Cir. 1999) (quoting *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991).

In *Elliot Travel & Tours*, the employer did not pay its employees overtime wages for hours worked in excess of one 40-hour work week unless the total hours worked for the biweekly period exceeded 80 hours.  942 F.2d at 964.  Significantly, the employer had previously violated the FLSA's overtime provision.  But after paying the employees the unpaid wages and assuring future compliance with the FLSA's overtime requirements, the employer continued to violate the FLSA's provision.  *Id.* at 967.  Specifically, the records disclosed that when the employer finally did pay overtime compensation, commission payments were excluded in calculating the regular rate on which overtime was based.  *Id.*  After the DOL alleged willful violations on the employer's behalf, the employer attempted to rebut the DOL's argument with bare assertions of good faith in complying with the FLSA and by claiming that the employer did not have notice that commissions should be included in gross pay when computing overtime compensation.  *Id.* This court rejected the employer's good faith and notice arguments, holding that its previous violations, its agreement to pay unpaid overtime wages, and its assurances of future compliance constituted actual notice of the violations which supported a finding of willfulness.  *Id.*

In *Palo Group Foster Home*, the employer undercompensated its employees by failing to pay for hours worked during sleeping shifts. 183 F.3d at 471. The employer only paid the employees a set wage per shift regardless of actual hours worked. *Id.* The DOL had previously investigated and found the employer in violation of the FLSA's compensation provisions on two separate occasions. *See id.* We held that the undisputed evidence of the employer's prior violations, payment of unpaid compensation, and assurances of future compliance demonstrated that the employer had actual notice of the FLSA requirements. *See id.* at 474. Accordingly, we held that this undisputed evidence was sufficient to prove that the employer's violations were willful, *i.e.*, "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Id.* (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)); *see also McLaughlin*, 486 U.S. at 133.

Here, like the employers in *Elliot Travel & Tours* and *Palo Group Foster Home*, KDE (1) had previously been investigated and found in violation of the FLSA, (2) was enjoined by a district court from continuing to violate the statute and ordered to pay unpaid overtime compensation, and (3) made assurances that it would comply in the future. *See Elliot Travel & Tours*, 942 F.2d at 967; *Palo Grp. Foster Home*, 183 F.3d at 473–74. It is true that we do not read *Elliot Travel & Tours* and *Palo Group Foster Home* as establishing that an employer's violation of the FLSA is per se willful whenever undisputed evidence of these three factual circumstances exists. The presence of such undisputed evidence, however, does strongly suggest that the employer had actual notice of the requirements of the FLSA, upon which a finder of fact could reasonably infer that an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited."

We review a district court's grant of summary judgment de novo, "viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 843 (6th Cir. 2019) (citing *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 345 (6th Cir. 2018)). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

Whether a defendant willfully violated the FLSA is a factual question. *See Elliot Travel & Tours*, 942 F.2d at 967 (reviewing the record to determine whether a genuine issue of material fact existed as to the willfulness of employer's conduct). An employer having notice of the FLSA requirements by virtue of prior violations and assurances of future compliance is a material fact that we have found to be highly indicative of willfulness. *See, e.g.*, *Elliot Travel & Tours*, 942 F.2d at 967; *Palo Grp. Foster Home*, 183 F.3d at 474. Accordingly, the factual disputes as to whether an employer's prior violations and assurances of future compliance gave the employer actual notice of its obligations under the FLSA raise enough of a genuine issue of material fact to preclude summary judgment.

As evidence that the violations were not willful, KDE offered that after the 2013 injunction and consent judgment, it retained a FLSA and payroll expert (Pete Belanto), implemented timesheets, required employees to complete their own timesheets, and posted labor law signs in its barns. The district court noted that the fact KDE began implementing time sheets and posted labor law signs are evidence that the current violations of the FLSA were not willful. However, the district court failed to consider arguments and factual assertions the DOL made in its motion for summary judgment and its responses to KDE's motion that raise a genuine issue of material fact as to whether KDE willfully violated the FLSA.

First, in its motion for partial summary judgment, the DOL stated that KDE was previously investigated by the New York DOL. The DOL explained that this investigation led to the United States District Court for the Eastern District of New York issuing an injunction requiring KDE to comply with the FLSA and pay unpaid overtime compensation. The injunction, among other things, specifically required that KDE comply with the same FLSA provisions at issue in this case (i.e., Section 6, Section 7, and Section 11). The DOL, thus, presented evidence from which a reasonable jury could infer that KDE willfully violated the FLSA because it had actual notice of the requirements of the FLSA by virtue of earlier violations and the injunction. *See Elliot Travel & Tours*, 942 F.2d at 967 (finding employer's violation of FLSA willful where employer "had actual notice of FLSA requirements by virtue of earlier violations," assured future compliance, and paid unpaid overtime wages).

Second, KDE's own actions and admissions following the 2013 injunction further support the inference that KDE had actual notice of its FLSA obligations. KDE stated that it "made sure that each non-exempt employee received a minimum wage and overtime compensation . . . for all hours worked . . . as required under the FLSA[] [and] introduced timesheets to comply with their timekeeping and/or recordkeeping obligations." A reasonable jury could infer that this demonstrates KDE's awareness that non-exempt employees are to be paid hourly wages and that accurate time records of hours worked by employees must be kept.

Third, KDE's awareness of the minimum wage, overtime, and recordkeeping requirements is even more significant considering the DOL's assertions that KDE attempted to conceal violations and to simulate compliance. The DOL asserted that KDE's payroll records were modified in a manner to give the appearance that employees were being paid by the hour. The DOL stated that the hours recorded on payroll records from 2014 were usually "calculated by dividing the employee's salary by $8.00 per hour, the rate that Mr. Belanto believed to be the minimum wage." A reasonable jury could infer from this that KDE knowingly modified its records to portray that its employees were paid by the hour. This could suggest to a juror that KDE was attempting to conceal its failure to pay overtime or to eliminate evidence that might be used against it later. *See Univ. Hosps. Home Care.*, 276 F.3d at 844. Either of which would suggest KDE knew that its practices were prohibited by the FLSA.

Moreover, the DOL cited deposition testimony of Pete Belanto, in which Belanto testified that timesheets would not arrive until after checks were issued and that he did not even use the timesheets that employees filled out when issuing paychecks. KDE claimed it introduced timesheets to comply with the FLSA wage and recordkeeping requirements, yet Mr. Belanto admitted to only occasionally using the timesheets for processing payroll. A reasonable jury could infer from this record that KDE intended to simulate compliance with the FLSA by maintaining timesheets that were not actually used to issue payroll.

We conclude that the district court's grant of summary judgment on the willfulness issue in favor of KDE was inappropriate because genuine issues of material fact existed as to whether KDE willfully failed to pay its employees in compliance with the FLSA. And because liquidated

damages are available for potentially willful violations of the FLSA's provisions, we VACATE the judgment as to the willful and liquidated damages claims.

## CONCLUSION

For the foregoing reasons, we AFFIRM in part and VACATE in part the district court's findings, and REMAND for further proceedings.