**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1632

UNITED STATES DEPARTMENT OF LABOR; R. ALEXANDER ACOSTA, Secretary of Labor,

Plaintiffs - Appellees,

v.

FIRE & SAFETY INVESTIGATION CONSULTING SERVICES, LLC; CHRISTOPHER HARRIS, Individually and as Owner of Fire & Safety Investigation Consulting Services LLC,

Defendants - Appellants.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, District Judge. (1:17-cv-00025-IMK)

Argued: December 12, 2018                    Decided: February 8, 2019

Before GREGORY, Chief Judge, WYNN and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Joseph Lawrence Amos, Jr., MILLER & AMOS ATTORNEYS AT LAW, Charleston, West Virginia, for Appellants. Rachel Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellees. **ON BRIEF:** Karen H. Miller, MILLER & AMOS ATTORNEYS AT LAW, Charleston, West Virginia, for Appellants. Kate S. O'Scannlain, Solicitor of Labor, Jennifer S. Brand, Associate

Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellees.

WYNN, Circuit Judge:

Fire & Safety Investigation Consulting Services, LLC, ("Fire & Safety") and Christopher Harris ("Harris"), the owner of Fire & Safety, appeal the district court's determination that Fire & Safety violated the Fair Labor Standards Act ("FLSA") by failing to pay certain employees proper overtime compensation. At issue is whether Fire & Safety's payment system violated the FLSA by failing to pay for overtime. The district court held that the payment system violated the FLSA because it used a blended rate that functioned as the actual hourly rate for all hours worked, regardless of whether those hours were overtime or non-overtime. We agree and therefore, affirm.

I.

In 2008, Harris founded Fire & Safety,[1] which provides fire investigation and security guard services to the company's clients in the oil and gas industry. In 2013, Fire & Safety began employing individuals ("Consultants") to provide onsite safety and environmental consulting services in West Virginia and Pennsylvania. Between December 23, 2014, and December 6, 2016, Consultants were regularly scheduled to work what is known in the industry as a "hitch." J.A. 1266. Consultants assigned to a "hitch" worked 12 hours per day for 14 consecutive days, followed by 14 consecutive days off, resulting in a total of 168 hours worked during a full "hitch." Consultants sometimes worked a full, 168-hour hitch, and sometimes fewer than the full 168 hours.

---

[1] We collectively refer to Harris and Fire & Safety as "Fire & Safety."

3

Fire & Safety initially paid the Consultants on an hourly basis—a regular rate for the first 40 hours worked in a workweek, and then overtime at one and one-half times their regular rate for hours worked over 40 per workweek. Fire & Safety later transitioned to a different payment system based on a "hitch rate." Under that system, if the Consultants worked the full two-week hitch of 168 hours, or 84 hours per workweek, Fire & Safety paid a fixed sum that allegedly reflected a regular rate and an overtime rate—i.e., the regular rate for the first 40 hours a Consultant worked in a particular week and one-and-a-half times the regular rate for the next 44 hours the Consultant worked during the week. If the Consultants worked *less* than a full 168-hour hitch over the two-week period, Fire & Safety adjusted the employee's pay using a "blended rate." Fire & Safety calculated the blended rate by dividing the Consultant's fixed hitch rate by 168 (the total number of hours worked in a normal hitch) and then multiplying that hourly blended rate by the number of hours actually worked by the Consultant to obtain the Consultant's pay for that two-week period.

A hypothetical example of a Consultant working at a purported regular rate of $10/hour illustrates this payment scheme. Under Fire & Safety's description of the hitch payment structure, the Consultant's fixed rate for a full 168-hour hitch would allegedly be based on 80 hours of non-overtime (at $10/hour), for a total of $800, and 88 hours of overtime (at $15/hour), for a total of $1,320, for a combined total of $2,120. If the Consultant worked the full two-week, 168-hour hitch, he was paid $2,120—his hitch rate. However, if the Consultant worked, say, only 48 hours of the hitch, he was paid using the blended rate, obtained by dividing $2,120 by 168 hours; in our example, that results in a

4

blended rate of $12.62 (rounded to the nearest cent). For 48 hours of work, the Consultant would then be paid $12.62 times 48, for a total of $605.76.

In October 2015, an anonymous Consultant complained to the Department of Labor's Wage & Hour Division that Fire & Safety was violating the FLSA by failing to pay overtime. A Wage & Hour Investigator assigned to the case ultimately determined that Fire & Safety had failed to pay proper overtime and keep accurate records and calculated that Fire & Safety owed significant back wages. At the end of the investigation, Fire & Safety, without admitting liability or agreeing to pay damages, ceased use of the hitch rate payment scheme.

On February 22, 2017, the Department of Labor filed a complaint against Fire & Safety, alleging that Fire & Safety violated the FLSA by employing the Consultants for workweeks longer than 40 hours per week without overtime compensation. The Department of Labor also alleged that Fire & Safety violated the FLSA by failing to make and maintain adequate and accurate records of hours worked by the Consultants. The Department of Labor sought back wages, liquidated damages, and an injunction.

Following discovery, both parties filed motions for summary judgment. On May 3, 2018, the district court granted in part and denied in part the Department of Labor's motion for summary judgment and denied Fire & Safety's motion for summary judgment. The district court concluded that Fire & Safety violated the FLSA's overtime requirement by failing to pay the Consultants an overtime premium for their overtime hours. The district court also concluded that Fire & Safety failed to keep proper records, including records of the hours worked by each Consultant each day, in violation of the

5

FLSA. The district court denied the Department of Labor's request for injunctive relief but granted $817,902.11 in back wages and $817,902.11 in liquidated damages, for a total damages amount of $1,635,804.22. Fire & Safety timely appealed the district court's decision.

## II.

We "review the district court's grant of summary judgment de novo." *Morrison v. Cty. of Fairfax*, 826 F.3d 758, 765 (4th Cir. 2016) (citation omitted). A court may award summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

The FLSA is "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015). Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Id.* (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

As part of its overtime protections, the FLSA requires that covered employers pay their employees "at a rate not less than one and one-half times the regular rate at which [they are] employed" for any hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to" the employee, apart from eight categories of payment not at issue here. 29 U.S.C. § 207(e); *see also Flood v. New Hanover Cty.*, 125 F.3d 249, 251 (4th Cir. 1997) ("The

6

employee's 'regular rate' is the hourly rate that the employer pays the employee for the normal, nonovertime forty-hour workweek.") (quoting *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944)).  The FLSA's overtime requirement "was intended to spread employment by placing financial pressure on the employer and to compensate employees for the burden of a workweek in excess of the hours fixed in the Act."  *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015) (quoting *Helmerich & Payne*, 323 U.S. at 40) (internal quotation marks omitted).

To determine whether Fire & Safety's payment scheme violated the FLSA, we must first decide what constitutes the "regular rate" of compensation actually paid to the Consultants, as that rate establishes the proper overtime compensation due.  29 U.S.C. § 207(a)(1); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (describing the "regular rate" as the "keystone" of Section 207(a)(1)).  The regular rate is "the hourly rate that the employer pays the employee for the normal, non-overtime forty-hour workweek."  *Flood*, 125 F.3d at 251 (citation omitted).  When determining the regular rate, courts are "required to look beyond that which the parties have purported to do," as the regular rate is an "actual fact."  *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947); *see also* 29 C.F.R. § 778.108 (stating that the regular rate "must be drawn from what happens under the employment contract").

The Supreme Court's ruling in *Asselta* guides our analysis.  In that case, a collective bargaining agreement provided for a fixed weekly payment for regular

7

employees working 46 hours per week and watchmen working 54 hours per week.[2] *Asselta*, 331 U.S. at 202. The employer in *Asselta* claimed that the fixed weekly payment reflected both non-overtime and overtime compensation; instead of determining an hourly rate of pay upon which the fixed weekly amount was based, the agreement included a formula that derived the regular rate for non-overtime hours from the fixed weekly amount and the employee's scheduled hours. *Id*. at 202–03. However, the evidence in *Asselta* established that the regular rate was in fact obtained by dividing the weekly wage for the scheduled workweek by the number of hours in that scheduled workweek. *Id*. at 204–05. Therefore, the agreement "made no adequate provision for overtime." *Id*. In other words, the hourly rate of pay at issue in *Asselta* remained the same irrespective of whether an employee worked more than, less than, or exactly 46 hours.

Crucially, the Supreme Court pointed out that even employees working *fewer* than 40 hours a week—or no overtime hours—were still paid using the same hourly rate of pay that supposedly factored in overtime. *Id*. at 205. The Supreme Court found that such compensation "considerably in excess of the formula rate" violated the FLSA, because the "payment of 'overtime' compensation for non-overtime work raises strong doubt as to the integrity of the hourly rate upon the basis of which the 'overtime' compensation is calculated," and is "evidence of an attempt to pay a pro-rata share of the weekly wage."

---

[2] We describe *Asselta* with reference to only the employees working 46 hours per week, but the Supreme Court held that the same analysis applies to the watchmen working 54 hours per week.

*Id*.  Accordingly, the Supreme Court concluded that for purposes of the FLSA, the regular rate was the hourly rate the employer actually paid (the fixed weekly salary divided by the 46 scheduled hours).

*Asselta* establishes that in determining the regular hourly rate for purposes of the FLSA, courts must look beyond the contractual agreement to actual pay practices. When determining the regular hourly rate, courts examine whether the blended rate consistently applies across the board, regardless of the number of hours actually worked in a week. Especially significant is whether such a blended rate—which supposedly factors in overtime compensation—is paid even when an employee does *not* work overtime hours. Such schemes cast doubt on the "integrity of the hourly rate" upon which overtime compensation is calculated and indicate that the blended rate actually serves as the regular rate. *Asselta*, 331 U.S. at 205. Ultimately, "blended pay schemes that fail to account for the actual number of regular and overtime hours that an employee works are impermissible replacements for traditional overtime pay rates under the FLSA." *Lopez v. Genter's Detailing, Inc.*, 511 Fed. App'x 374, 375 (5th Cir. 2013).

Turning to this case, we hold that the district court correctly concluded that Fire & Safety's use of the blended rate possesses the same defects as the impermissible payment structure at issue in *Asselta*. In particular, the district court properly determined that in practice, Fire & Safety's blended rate operated as the regular rate for the purposes of determining Consultants' overtime compensation.

To better demonstrate this conclusion, we turn to an example of the "actual fact[s]" of Fire & Safety's pay practices. *Asselta*, 331 U.S. at 204. According to Fire &

9

Safety's 2015 payroll records, one Consultant had an hourly regular rate of $23.58, and his hitch rate was $5,000 per hitch. Fire & Safety argues that the hitch rate incorporated both straight-time and overtime rates, pursuant to 29 C.F.R. § 778.309. Therefore, when the Consultant worked a full hitch, as he did on the pay period ending January 23, 2015, he was allegedly compensated for 80 non-overtime hours at $23.58/hour, and 88 overtime hours at $35.37/hour (his overtime rate of $23.58 x 1.5).

| 80 non-overtime hours | x | $23.58/hour | = $1,886.40 |
|---|---|---|---|
| 88 overtime hours | x | $35.37/hour | = $3,112.56 |
| | | TOTAL | = $4,998.96 (rounded up to $5,000) |

We note that there are two ways to reach this $5,000 figure. First, it can be obtained using Fire & Safety's calculation that allegedly incorporates 80 non-overtime hours at the Consultant's regular rate and 88 hours at his overtime rate. However, the $5,000 sum can also be reached if the Consultant's blended rate of $29.76/hour—$5,000 divided by 168—actually operated as the regular rate.[3]

If we examine the Consultant's compensation when he worked *less* than a full hitch, it becomes clear that his blended rate of $29.76/hour actually operated as the regular rate. For example, on the pay period ending January 9, 2015, the Consultant worked only six 12-hour days (or 72 hours), rather than a full hitch. Had the Consultant

---

[3] For ease of description, we have rounded this Consultant's blended rate to the nearest cent. But for purposes of calculating the owed back wages, *see infra* Part II.B, the Department of Labor properly utilized rates with their full decimals.

been compensated per his alleged regular rate of $23.58/hour, he would have received the following for his 72-hour workweek:

> 40 non-overtime hours  x  $23.58/hour  = $943.20
>
> 32 overtime hours  x  $35.37/hour  = $1,131.84
>
> TOTAL      = $2,075.04

In fact, however, he received $2,142.86 for that six-day work period, which is his blended rate ($29.76/hour) multiplied by 72 hours worked.

Tellingly, the blended rate was also used when a Consultant worked *fewer* than 40 hours, in other words, when he worked no overtime at all. Consider another Consultant, whose regular rate, as listed on Fire & Safety's 2015 payroll, was $21.44/hour, with a hitch rate of $4,545/hitch. Accordingly, his blended rate was $27.05 ($4,545 divided by 168 hours).[4] On the pay date ending September 18, 2015, that Consultant worked a three-day period, or 36 hours. Had he been compensated using his purported regular rate, he should have received the following for his 36-hour workweek:

> 36 non-overtime hours  x  $21.44/hour  = $771.84

In fact, he was paid $973.93, which represents his blended rate:

> 36 non-overtime hours  x  $27.05/hour  = $973.93

---

[4] Again, we note that the $27.05 blended rate is rounded to the nearest cent, but all calculations were completed with the figure with all its decimals.

As the Supreme Court has noted, determining the regular rate is "a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 424–25. Further, under *Asselta*'s guidance, the payment of supposed "overtime" compensation for non-overtime work evidences an impermissible attempt to pay a "pro-rata share of the weekly wage." *Asselta*, 331 U.S. at 205. This series of calculations demonstrates that under *Asselta*, Fire & Safety's blended rate in fact served as the regular rate. Otherwise, when Consultants like those above worked less than a full hitch, their wages would have properly accounted for their non-overtime and overtime hours using their purported regular hourly rates, instead of their blended rates.

B.

Fire & Safety principally argues that its hitch rate compensation system complied with the FLSA because the Department of Labor's implementing regulations for the FLSA, which post-date the Supreme Court's decision in *Asselta*, expressly authorize fixed sum payments for overtime work. Fire & Safety is correct that the Department of Labor's implementing regulations for the FLSA provide that when an employee works a fixed number of overtime hours, the employer may pay the employee a fixed sum each week. In particular, "where an employee works a regular fixed number of hours in excess of the statutory maximum each workweek, it is, of course, proper to pay him, in addition to his compensation for nonovertime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked." 29 C.F.R. § 778.309.

12

However, Section 778.309 applies only when an employee works a *fixed* number of overtime and non-overtime hours, and therefore does not address the issue raised in the instant case: whether the FLSA permits an alternative means of compensation, here, the blended rate, when an employee works *fewer* than a fixed number of overtime hours.[5]

Significantly, in decisions post-dating the Department of Labor's promulgation of Section 778.309, the Second and Fifth Circuits have applied *Asselta* in holding unlawful payment schemes similar to the one employed by Fire & Safety. In *Adams v. Department of Juvenile Justice*, 143 F.3d 61 (2d Cir. 1998), the Second Circuit examined a pay structure in which employees were paid a fixed salary for a 60-hour workweek. The record included evidence that when an employee worked fewer than 60 hours, the employee was compensated not by his regular hourly rate, but rather by a pro rata rate derived from dividing the fixed salary for the 60-hour workweek by the number of hours the employee worked. *Id.* at 69.

For example, if an employee's rate was $10/hour, the weekly salary for an employee working a scheduled 60-hour workweek was $700 (($10 x 40 straight-time hours) + ($15 x 20 overtime hours)). *Id.* at 70. However, the record appeared to indicate that if an employee worked 59 hours, he was docked a pro rata rate of $11.67 ($700

---

[5] Fire & Safety also argues that its payment structure comports with a provision in the Department of Labor's Field Operations Handbook ("FOH"), which permits lump-sum overtime payments. FOH, Ch. 32, ¶ 32j06, *available at* https://www.dol.gov/whd/FOH/FOH_Ch32.pdf. However, that provision solely applies for "limited period[s]," where employers compensate employees with a lump sum for a "special job" for an estimated number of overtime hours. *Id.* This provision is inapplicable for regularized work schedules that purportedly include overtime compensation.

divided by 60 hours), rather than one overtime hour's worth of $15.00. *Id*. The Second Circuit concluded that this discrepancy indicated that the employer did not "adhere strictly to the formula rate." *Id*.

The Second Circuit ultimately remanded the case for further record development on the employer's pay docking practices. However, appealing to *Asselta*, the court stated that the payment scheme would violate the FLSA if employees working fewer than 60 hours were docked "a pro rata share of their weekly wage," instead of a "straightforward calculation of hours worked multiplied by the formula hourly rate." *Id*. at 69. Further, the Second Circuit noted that even though this particular pro rata docking practice appeared, at least on its face, to be more favorable to the employees, this did not prevent the practice from being relevant in determining if the employer's payment scheme complied with the FLSA. *Id*. at 69 n.9.

The Fifth Circuit similarly rejected an analogous pay scheme in *Lopez v. Genter's Detailing, Inc.*, No: 3:09-CV-0553, 2011 WL 5855269 (N.D. Tex. Nov. 21, 2011), *aff'd*, 511 F. App'x 374 (5th Cir. 2013) (unpublished decision). In that case, the court considered whether the blended rate on the employee's pay stubs—a fixed hourly rate for both regular and overtime hours for a 96-hour, two-week period—complied with the FLSA. *Id*. Because the employer never compensated the employee using the purported regular rate when the employee worked *fewer* or *greater* than 40 hours per week, the district court applied *Asselta* and concluded that the employer "never paid any amount to any employee using the alleged real regular rate." *Id*. at *4. Of particular importance,

14

the employer paid the blended rate, which purportedly reflected overtime payments, even when the employee failed to work any overtime hours. *Id*. at *3.

*Adams* and *Lopez* stand in line with *Asselta* and our resolution of this case. Just as in *Adams* and *Lopez*, Fire & Safety impermissibly paid its Consultants a uniform rate that failed to properly account for the actual number of non-overtime or overtime hours. Accordingly, Fire & Safety never paid its Consultants during the time period in question using the purported regular rate.[6]

Fire & Safety contends that *Asselta*, *Lopez*, and *Adams* are inapposite because unlike those cases, the "hitch" pay structure "was not designed to pay employees less than they were entitled to receive." Appellant's Br. at 25. But such alleged lack of bad faith cannot excuse a violation of the FLSA. The good-faith nature of an employer's action is relevant in a court's determination of whether to award liquidated damages under the FLSA, not in determining whether it violated the FLSA in the first place. *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) ("[A] district court, in its sound discretion, may refuse to award liquidated damages if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a

---

[6] Fire & Safety's reliance on this Court's unpublished opinion in *Smith v. Association of Maryland Pilots*, 89 F.3d 829 (4th Cir. 1996) (per curiam) (unpublished decision) is misplaced. In that case, an agreement between the employer and employees showed an understanding that the monthly wage included overtime compensation, and the actual payment practices reflected payment of that overtime compensation. *Id*. However, here, unlike *Smith*, undisputed facts indicate that Fire & Safety's actual practice did not conform to its alleged agreement because Consultants' pay did not include overtime.

15

violation of the [FLSA].'") (quoting 29 U.S.C. § 260). Fire & Safety has not appealed the district court's award of liquidated damages, so any invocation of its good faith is irrelevant to our discussion. Moreover, *Asselta*, *Adams*, and *Lopez* did not rely on employers' good faith—rather, they squarely rejected pay schemes analogous to the one at issue here, wherein employers pay the same rate regardless of straight and overtime hours.

Because the "blended rate" operated as the regular rate within the FLSA, the district court correctly concluded that Fire & Safety did not properly compensate its Consultants for overtime. This is so despite the blended rate's apparent "overcompensation" of the Consultants. Fire & Safety emphasizes that when the Consultants worked less than a full hitch, they received more under a blended rate than they would have otherwise received had their purported regular rates been used. However, this purported "overcompensation" is illusory. The Consultants were overcompensated only if we accept Fire & Safety's fiction—that the blended rate did not operate as the regular rate. Because the blended rate did in fact function as the regular rate, and therefore should have been the baseline in calculating the overtime rate, it becomes plain that Consultants should have received *greater* compensation than what they received under Fire & Safety's payment scheme.

Consider again the Consultant working the 6-day, 72-hour shift described above. Because that Consultant's blended rate of $29.76/hour (rounded to the nearest cent) was his regular rate, for the shift in question he should have received:

16

40 non-overtime hours   x   $29.76/hour  = $1,190.48

    32 overtime hours   x   $44.64/hour  = $1,428.57

                        TOTAL        = $2,619.05[7]

Instead, he was paid $2,142.86. Accordingly, for the pay period ending on January 9, 2015, that Consultant was undercompensated by $476.19. Such undercompensation occurred with respect to 70 Consultants in total. When employees already have received non-overtime pay for all hours worked, as is the case here, "unpaid overtime compensation" is due under the FLSA at 50% of the regular rate for the overtime hours worked. *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354–57 (4th Cir. 2011). For instance, regarding his example 72-hour shift, that Consultant would be owed $14.88 (the blended rate of $29.76 multiplied by 0.5) x 32 (the number of overtime hours), equaling $476.19, which matches the above figure determining his undercompensation.

Our holding guards against creative payment schemes in which employers retroactively divide a fixed payment into non-overtime and overtime components to demonstrate supposed compliance with the FLSA. As the Department of Labor regulations emphasize, the "Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work" would be "defeated" if an employer "could merely label as overtime pay a fixed portion of such

---

[7] Again, for ease of illustration, we have listed this Consultant's blended rate as $29.76, but we, like the Department of Labor, have done this calculation using the blended rate with all its decimals.

salary sufficient to take care of compensation for the maximum number of hours that would be worked." 29 C.F.R. § 778.310. To rule otherwise would permit employers to invent payment schemes that fail to pay proper overtime and then post-hoc attempt to reverse-engineer compliance with the FLSA. *Cf. Acosta v. Min & Kim Inc.*, No. 15-CV-14310, 2018 WL 500333, at *10 (E.D. Mich. Jan. 22, 2018) (noting that defendants' "post-hoc reconstructions . . . do not evidence compliance with the FLSA"). Such "hypothetical retrospective construction" of a rate structure that supposedly includes overtime thwarts "the goals of the [FLSA]." *Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 (9th Cir. 1975). Although the FLSA does not "impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement," employers must properly pay overtime compensation, no matter their chosen pay structure. *Asselta*, 331 U.S. at 203–04. Fire & Safety failed to do so.

Finally, Fire & Safety attempts a last-ditch effort to save its payment scheme by arguing that Consultants worked a full 168-hour hitch the majority of the time. But Fire & Safety did not violate the FLSA solely on those occasions that the Consultants worked less than a full hitch. Because the "blended rate" actually operated as the regular rate, the Consultants are owed back wages for even those overtime hours worked during a *full* 168-hour hitch. And at any rate, we reiterate that violating the FLSA on a minority of occasions does not excuse that violation. Tellingly, Fire & Safety does not—and

18

cannot—cite to a single case supporting its theory supposedly excusing "de minimis" FLSA violations.[8]

In sum, because the record indicates that Fire & Safety improperly paid its Consultants a uniform single rate for all hours worked, we affirm the district court's ruling that Fire & Safety violated the FLSA by failing to pay the Consultants overtime compensation.

## III.

We next turn to whether Fire & Safety complied with the FLSA's recordkeeping requirements.[9] The FLSA requires employers to "make, keep, and preserve" employee records, as well as "the wages, hours, and other conditions and practices of employment" for a time period outlined in the regulations. 29 U.S.C. § 211(c). The regulations require that employers "maintain and preserve payroll or other records" of "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7). The FLSA's recordkeeping provisions are vital in ensuring employer compliance with the

---

[8] Under the FLSA, the "de minimis" principle only comes into play when determining whether an employee's time worked is de minimis such that an employer need not compensate her. *See Perez*, 650 F.3d at 375 (concluding that roughly 10 minutes per work shift spent donning protective gear are not de minimis and employees are entitled to compensation).

[9] We reject the Department of Labor's position that Fire & Safety waived this argument. In its response to the Department's motion for summary judgment, Fire & Safety argued that "there can be no claim that the Defendants failed to maintain proper records in violation of the Act." J.A. 1101. Although it did not cite the specific regulation it now invokes on appeal, its argument is preserved. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 604 (4th Cir. 2004) ("In assessing whether an issue was properly raised in the district court, we are obliged on appeal to consider any theory plainly encompassed by the submissions in the underlying litigation." (citation omitted)).

statute.  *See McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016). The district court concluded that Fire & Safety failed to maintain appropriate records under the FLSA.  For the following reasons, we agree.

Fire & Safety contends that its records satisfied 29 C.F.R. § 516.2(c), which provides that with respect to employees working on fixed schedules, employers may maintain records that show the schedule of daily and weekly hours worked by the employee, instead of the hours worked each day and workweek.  In weeks in which an employee adheres to the fixed schedule, the employer may indicate "by check mark, statement or other method" that such hours were in fact actually worked.  29 C.F.R. 516.2(c)(1).  However, the regulation also provides that "in weeks in which *more or less* than the scheduled hours are worked," the employer must show the "exact number of hours worked each day and each week."  29 C.F.R. § 516.2(c)(2) (emphasis added).

The record demonstrates that when Consultants did not work the "fixed schedule"—a full 168-hour hitch—Fire & Safety did not show the exact number of hours worked each day and each week for every employee.  Fire & Safety provides evidence that they did so on three occasions—when three Consultants worked fewer than 168 hours, those hours were recorded.  However, those examples do not show the exact number of hours worked each day in the two-week period, as required by Section 516.2(c)(2), but rather that the Consultants worked fewer hours than 168 hours.  And, for the vast majority of Consultants, no hours at all were recorded when they worked less than a full hitch. Indeed, a declaration from the Department of Labor's Assistant District Director overseeing the Wage & Hour Investigator in this case also indicates that Fire &

20

Safety did not have records of the hours worked by each employee during each workday. Apart from the three examples cited, Fire & Safety does not seriously dispute its inadequate recordkeeping, and therefore this does not constitute a genuine dispute of material fact warranting remand.

Accordingly, Fire & Safety's reference to the specific hours worked by employees on three isolated occasions does not demonstrate compliance with the FLSA's stringent recordkeeping requirements. Therefore, we agree with the district court and hold that Fire & Safety failed to make and maintain proper records under the FLSA.

IV.

The FLSA shields employees from precisely the type of payment scheme utilized by Fire & Safety—one that appears to compensate employees for both non-overtime and overtime but in reality, uses a single rate for all hours worked, regardless of whether they are non-overtime or overtime hours. Upholding such a scheme and accepting Fire & Safety's retroactive justifications would undercut one of the fundamental purposes of the FLSA: ensuring that employees are adequately paid for all overtime hours. Therefore, for the foregoing reasons, we affirm the district court's decision granting summary judgment to the Department of Labor.

*AFFIRMED*